## Leah Gable et al., Appts., *v.* George W. Brietsch.

A certificate of the separate acknowledgment of a married woman, although omitting to state that she delivered as well as signed and sealed the deed without compulsion, etc., is not invalid, if otherwise in the usual

NOTE.—For acknowledgment of deeds by married women see the act of April 4, 1901 (P. L. 67).

form; it is a substantial compliance with the statute, and therefore sufficient.

The evidence in this case held sufficient to warrant the finding that the mortgage was not given as collateral security.

(Decided October 4, 1886.)

Certiorari sur appeal from a decree of the Common Pleas of Franklin County dismissing exceptions and confirming the report of the auditor to make distribution of the proceeds of a sheriff's sale. Affirmed.

In proceedings by scire facias to foreclose a mortgage the real estate covered by the mortgage was sold by the sheriff for $2,250, and O. C. Bowers, Esq., was appointed auditor to make distribution.

The auditor found as a fact that the mortgage was given in 1881 by Michael Gable and Leah, his wife, upon real estate belonging to the wife, under the following circumstances:

Michael Gable, having served a term as sheriff of the county, employed H. Gehr to collect the fees due him. Gable was indebted to George Brietsch, the appellee, for bread furnished to the county jail; and Gehr, having also in his hands Brietsch's claim for collection, proposed that if Gable and wife would give this mortgage of the wife's real estate to secure the debt he (Gehr) would advance the money upon it and pay off Brietsch. This was done; but when Gehr offered to pay Brietsch the money, Brietsch preferred to take the mortgage instead, and accordingly Gehr assigned it to him. The certificate of the wife's separate acknowledgement stated that "she did voluntarily, and of her own free will and accord, sign and seal" the mortgage, but omitted to state in the separate acknowledgment that she also delivered it, although the certificate stated in the usual form that they acknowledged that they delivered it, etc.

There was at the time the mortgage was given money enough due Gable upon his book accounts, over and above exempt property, to pay Brietsch's claim, but Gable afterwards used nearly all the money as fast as it was collected, and at the time of the sale was insolvent.

The auditor found as facts, *inter alia,* that it was no part of the arrangement that Gehr was to hold the mortgage as a security, and that he should repay himself out of Gable's costs as he should collect them, and that it was not a condition of the giving of the mortgage that it was to be paid out of money to be collected from his books. The testimony is reviewed in the opinion of the court below.

The auditor also found as matter of law that the acknowledgment was sufficient, and that the mortgage was entitled to be paid out of the fund. He reported a schedule of distribution in accordance with these conclusions. To this report exceptions were filed by Leah Gable. The exceptions related both to the findings of fact and the conclusions of law.

ROWE, P. J., overruling the exceptions, said, *inter alia:*

"An objection has been made, but not much insisted upon, as to the form of the acknowledgment. No doubt the acknowledgment is a substantial compliance with the act of 1770. That the wife is of full age need not be certified. Michael Gable is referred to as 'her said husband.' Both acknowledged that they signed, sealed, and delivered the same as their voluntary act and deed.

"The magistrate, in taking an acknowledgment, is required to do two things: (1) to examine the wife separate and apart from her husband; (2) to make known to the wife the full contents of the deed. The contents may not be made known upon the separate examination. It is required, however, that upon the separate examination she shall, in substance, declare that she did voluntarily and of her own free will and assent seal and, as her act and deed, deliver the deed, without any coercion or compulsion of her husband. Now the certificate states that she did declare that she did voluntarily, and of her own free will and accord, sign and seal the written indenture, without any compulsion on the part of her said husband, to the end the same might be recorded as such, as her act and deed." This is equivalent to saying that as her act and deed she delivered the same. And the whole is to be understood as declared upon her separate examination. Hornbeck v. Mutual Bldg. & L. Asso. 88 Pa. 64;

Jamison v. Jamison, 3 Whart. 457, 31 Am. Dec. 536; Shaller v. Brand, 6 Binn. 435, 6 Am. Dec. 482.

"Coming to the main question, I think that the right of Mr. Brietsch to participate in the fund for distribution, depends on this: whether Mrs. Gable executed the Gehr mortgage upon the faith of his agreement to repay his advance out of the moneys collected by him for Michael Gable; in other words, whether the mortgage was given as collateral security.

"Mr. Gehr was collecting costs for Sheriff Gable. George Brietsch had a claim for bread furnished to Gable amounting to $600, which he put in Mr. Gehr's hands for collection. The costs due Gehr would more than pay Brietsch, if applied to his claim after collection, and were liable to Brietsch's attachment. Gehr offered to furnish the money necessary to satisfy Brietsch, upon the security of Leah Gable's mortgage. The mortgage was executed. Gehr offered Brietsch the $600, but the latter preferred to take an assignment of the mortgage, which was transferred to him. Mr. Brietsch had nothing else to do with the transaction. Mr. Gehr never spoke to Mrs. Gable herself about the business. She knew that the object of the mortgage was the satisfaction of the Brietsch claim against her husband. She was told by her husband of the costs in Gehr's hands for collection, to an amount greater than the sum secured by the mortgage; and was assured that they would be applied to the mortgage debt and that there would be no trouble.

"There was, so far, no fraud, misrepresentation, or concealment in procuring the mortgage, nor was there a fraudulent or even harmful use made of it in transferring it to Mr. Brietsch; for what difference whether Gehr satisfied Brietsch with money or the mortgage, seeing that it was simply held until her land was sold upon another lien?

"But Mrs. Gable testifies that her husband told her that Mr. Gehr was to repay himself out of the costs collected, and that it was on the faith of this that she gave the mortgage. The auditor has not accepted her testimony, because in this and some other material particulars she differs from her husband and Esquire Seiders, whose evidence is to be preferred.

"First, as to what took place between Mr. Gehr and Sheriff

Gable; the former testifies, 'When I took this Brietsch mortgage to myself, I had no agreement or understanding with Mr. Gable, or anyone else, that it was to be paid out of his costs. Mr. Gable was after me time after time for his costs, and I paid them to him as fast as I collected them.'

"Michael Gable testifies that Mr. Gehr said, 'he would make it out of the books; . . . he would make up the money for Brietsch, and that would give Mr. Gehr time to collect the money from the books, and save me from being harassed or sued by Brietsch.' . . . The witness, being asked to state fully what transpired between him and Mr. Gehr, said: 'Mr. Gehr said we should give him the mortgage and he would advance the money and keep Brietsch from harassing me, and would make the collections out of the books and pay Brietsch off.'

"Now, I do not think that it can be collected, from a view of the evidence of these two as to what was said between them, that Mr. Gehr agreed or undertook to apply the moneys he should collect for costs to this debt; but only (if so much) that the costs were mentioned as a fund out of which the debt could be paid. The action of Mr. Gehr in paying out the money as fast as collected to Sheriff Gable, or upon his order, shows clearly how he understood the arrangement, for it is not supposable he would have paid out the money to others, without hesitation or question, which he knew were to be appropriated to the Brietsch debt.

"Second, as to what Sheriff Gable told his wife about the arrangement. Squire Seiders testifies: 'Mr. Gable told her his books were in the hands of Brewer & Gehr, and that there was money enough coming on them to more than pay off this mortgage; that as fast as the money came in it was to be applied to that purpose.' Here it is to be noticed that he did not say that Mr. Gehr had so promised or agreed.

"Michael Gable puts it in different ways: 'I told my wife there would be no trouble about that, as Mr. Gehr would make the money out of the collections within a year.' Again: 'She said, What does this mean? I told her I owed Mr. Brietsch and Mr. Gehr; said by doing this it would keep Brietsch from harassing me, and give him time to collect the money from the

books. I told her Mr. Gehr would hold this mortgage and there would be no trouble about it.' Subsequently, in answer to the question: How were her objections removed? he said: 'I just told her there would be no trouble about it; that Mr. Gehr would make the money very easily; that there was plenty of money there to do it with.'

"Now upon the evidence of these two witnesses, Seiders and Sheriff Gable, I do not think that the auditor could safely find that Mrs. Gable was told that Mr. Gehr had agreed to apply the costs to the Brietsch claim; nor could Mrs. Gable fairly infer, and therefore she was not at liberty to infer, that it was to be paid out of the costs, and that her mortgage was only to be a collateral security. They show this only: that she had the promise and assurance of her husband, whose debt she was about to secure, that he had the means in the costs due to him to meet the debt, and that they should be so applied. But every surety receives the same promise and assurance that he will not be troubled. If she had shown that she was told that Mr. Gehr had so agreed (that is, that he would look to the costs for repayment in the first instance), then, on the authority of Cridge v. Hare, 98 Pa. 561, she might perhaps successfully dispute the right of the Gehr mortgage to participate in the fund, because costs enough were, in fact, collected to pay the Brietsch claim.

"The exceptions are overruled, the report and distribution of the auditor is confirmed."

The assignments of error specified the action of the court in overruling the exceptions.

*Thad. M. Mahon* and *W. N. Brewer*, for appellants.—The giving of the mortgage to Brietsch, without the consent of Mrs. Gable, was such an alteration of the original arrangement as in law discharged the surety.

Misrepresentation committed prior to the execution of a guaranty, destroys its operation, and may be either verbal or in writing. De Colyar, Guaranties, p. 374; Blest v. Brown, 8 Jur. N. S. 603; 3 Giff. 450.

The surety is discharged by a variation which is not in itself material, where the surety has contracted on the faith of the

original or has. expressly made the terms of it part of his contract. The surety is held to become surety on the faith of the original agreement, if notice was given to him of the terms of the contract between the creditor and the principal debtor, and if after such notice he executed the guaranty. Garrett v. Handley, 4 Barn. & C. 664; Glyn v. Hertel, 8 Taunt. 208; Bacon v. Chesney, 1 Starkie, 192; Cridge v. Hare, 98 Pa. 561.

The act of assembly provides that a married woman must acknowledge not only that she signed and sealed, etc., but that she delivered the indenture without any coercion of her husband.

*H. Gehr* and *Jno. Stewart,* for appellee.—The report of an auditor upon the facts, approved by a judge, must. stand until plain error is pointed out. Liggett Spring & Axle Co.'s Appeal, 111 Pa. 291, 2 Cent. Rep. 318, 2 Atl. 684; Messinger's Appeal (Pa.) 1 Cent. Rep. 126, 1 Atl. 260.

Not every misrepresentation or variation from the original understanding necessarily operates as a discharge of a surety. It must be a material misrepresentation, or a variance that results prejudicially to the surety. Kerr, Fraud, 74; De Colyar, Guaranties, 391.

A substantial compliance with the form of certificate of acknowledgment prescribed by the act of assembly is sufficient. Hornbeck v. Mutual.Bldg. & L. Asso. 88 Pa. 64.

In Jamison v. Jamison, 3 Whart. 457, 31 Am. Dec. 536, the omission was the same as here. It was said by the court that although there were literal deviations from the act of assembly, yet the certificate was substantially in compliance with it, and therefore sufficient, according to the decisions in McIntire v. Ward, 5 Binn. 301, 6 Am. Dec. 417, and Shaller v. Brand, 6 Binn. 435, 6 Am. Dec. 482.

PER CURIAM:

An examination of the whole evidence fails to convict the auditor of error in his finding of facts. The finding was approved and confirmed by the court. The facts thus found clearly sustain the decree of distribution. The certificate of acknowl-

edgment is a substantial compliance with the requirements of the statute.

Decree affirmed and appeal dismissed, at the costs of the appellants.